Good morning. Illinois Appellate Court First District Court is now in session. The Third Division, the Honorable Justice Leroy K. Martin, Jr. presiding, case number 23-1820, People v. Peter Williams. Good morning, everyone. Aside from myself, there's Justice Mary K. Rochford and Justice Jesse Reyes. Would you please, each of the parties, first for the appellant and then the for the record? Good morning, Your Honors. Sidney Wardoff for the appellant, Mr. Peter Williams. Thank you. Good morning, Your Honors. I'm Assistant State's Attorney Brian Levitsky on behalf of Appalee, the people of the state of Illinois. Good morning, sir. Counsel for Mr. Williams, or to both of you, we usually allow about 15 minutes each for argument. Sometimes we'll vary that a little bit depending upon the number of questions that are asked you. Ms. Wardoff, did you wish to reserve some time for rebuttal? Yes, please. Four minutes. Okay. Four minutes. Justice Reyes, is everything okay? Yeah, I'm having problems with my internet. I might have to switch to my phone, and I apologize for that. I thought, you know, I had him come in and fix it today, but it doesn't seem like it's working. So, I'm going to stay on as much as possible. If I have to, I'll switch to my iPhone. Okay. Would you, if you let me know, then I can. Yeah, I better do that now. You want to do that now? Can you give me one minute? Absolutely. After, absolutely. All right. Ann Marie. All right. We'll just, we'll just recess for a few moments and allow Justice Reyes to to give him time to switch his internet, switch his source. Still doing it. No, I'm not seeing it. All right. Okay. All right. Very good, Justice Reyes. Ms. Warder, before you begin, I would advise both counsels that you don't have to spend a great deal of time talking about the facts of the cases. We're very familiar with the facts. So, with that admonition, Ms. Warder, if you please, you may begin. Morning. May it please the court, counsel. Unless your honors have questions on the other issues, I'd like to focus on those related to Mr. Williams's lack of counsel and the inabstantiated admonishments. Well, in that regard, I have a question. Particularly in this case, if an indigent defendant doesn't want a particular public defender, just a public defender, other than what the court did here, what should a court do? The court, in this case, should have appointed the public defender. Based on Mr. Williams's equivocal request to go pro se. But aren't you entitled to your own right of counsel? He didn't want, I think it was Ms. Maloney. He didn't want Ms. Maloney. So, in that case, what are you supposed to do as a trial judge? In this case, the trial judge needed to continue the appointment of the public defender. It may seem heavy-handed, but nothing about Mr. Williams's dissatisfaction with the APD he had tied the court's hands or forced the court to allow him to represent himself. A distaste for APD is not the ultimate consideration in whether or not the trial court should have allowed Mr. Williams to go pro se. The ultimate question, rather, is whether the waiver is intelligent and unequivocal. Here, Mr. Williams asked for the aid of counsel even on the day that he purportedly waived it. What could be more equivocal than that? Despite the fact that he didn't want the PD he had, he also very clearly wanted an attorney, and that is the ultimate question. The trial court doesn't need to, nor should it, grant every request to go pro se, and the courts deny defendants' requests all the time. In fact, here, another judge, in a case that was proceeding at the same time, denied Mr. Williams's request to go pro se because of his belief that he had a conflict with his PD about a speedy trial issue. Sympathetic to the trial judge's conflict here, he needed to wait on the side of appointment of counsel. And the effect of this was that, of course, the defense table at Mr. Williams's trial was empty. The state's case wasn't subject to any adversarial testing. The trial was essentially a farce that impinged on the integrity of what we consider the judicial process here, especially considering that Mr. Williams faced 219 charges, hundreds of years in prison, and he consistently requested the aid of counsel. Not only was his non-appearance directly related to his inability to represent himself, which he clearly expressed multiple times, but the fact that the defense table was completely empty was a direct result of him not having counsel like he should have had. The trial court erred in granting his 2021 waiver, which was wholly equivocal. Next, the trial court erred in not appointing standby counsel where Mr. Williams's case was complicated, and he clearly expressed his inability to handle his own defense. Then the trial court erred again in refusing to reappoint the PD, and instead insisted on holding Mr. Williams to his waiver, even though his conduct indicated that he didn't want to act as his own attorney. And even though holding him to that waiver didn't serve the interests of justice here. And then finally, the court failed to tell Mr. Williams that if he didn't appear, he would be waiving his rights across examination completely. Again, the result was a trial without any of the adversarial characteristics that define our system. It was equivalent to a devoid of any defense whatsoever. Mr. Williams, for those reasons, should have a new trial. Regarding specifically the initial bad waiver in 2021, the law is clear. There's a presumption against the waiver of counsel, and the waiver must be unequivocal. A defendant must truly desire to act as his own attorney. And here Mr. Williams requested the aid of counsel, and the trial court knew that he had already waived counsel and been reappointed counsel once before. And as this court has previously reasoned in People v. Pena, the dissatisfaction or hostility toward the PD is not reason enough to permit a waiver. Because again, the standard is not whether the defendant likes or dislikes the PD. It's whether or not he truly and unequivocally wants to act as his own counsel. Further, Mr. Williams' waiver in 2021 was essentially conditional on his incorrect belief that the court would consider counsel other than the public defender, based on the court's own statements to Mr. Williams. In April 2021, the court confused Mr. Williams' request for alternative counsel with a request for standby counsel, leaving Mr. Williams with the impression that the court would consider appointing counsel other than the PD. Then Mr. Williams waived counsel in reliance on the belief that the court would consider such a request. In July, there was confusion again, where Mr. Williams discussed his request for alternative counsel, but called it standby counsel. There was no correction of that misunderstanding and the court again said that it would consider such a request. Then when the court denied the motion for standby counsel, it said it was denying it at this point, again indicating that the court was going to consider some type of appointment in the future. The confusion about alternative and standby counsel highlighted why Williams shouldn't have been permitted to waive counsel in the first place, because it was clear he just wanted the aid of counsel from the very beginning. At this point in 2021, hadn't his motion for alternative counsel been denied? Yes, it was previously denied and yet he pursued again his desire for alternative counsel and then sort of waived it under the mistaken belief that that was still on the table, which it really wasn't. It doesn't seem like the trial court necessarily at that point in 2021 was going to entertain that. There was a crossed wire, so to speak, about what was possible for Mr. Williams at that point. In any case, Mr. Williams wanted the help of counsel. Whatever he called it. Moving on to the issue of standby counsel. Standby counsel here was warranted and the appointment would have allowed Mr. Williams to maintain control of his case while providing him the support that he clearly needed in representing himself. He was overwhelmed by the prospect of representing himself and he had standby counsel though. He would not have been so overwhelmed, would have been prepared enough to not simply give up and instead attend his own trial. The Gibson factors here for appointment weigh in favor regarding the nature and the gravity of the charges. That unquestionably weighs in favor of the appointment here. Mr. Williams faced, again, over 200 count indictment, hundreds of years in prison. Similarly, this case was complex. The sheer number of charges made it complex. The issues were not clearly defined as they were, say, in like People v. Con because there were so many elements to deal with and so many defenses. There was a mountain of three days' worth of testimony from 10 witnesses. There were 15 named victims. There was forensic evidence by way of gunshot residue tests. Mr. Williams faced complicated pre-trial motion regarding hearsay. He refused to participate in that hearing on the motion because he didn't understand what was going on, which was essentially a harbinger of what was to come at trial. And because there was a co-offender here, there were accountability issues, complicated hearsay exceptions. And, of course, the practiced attorneys that had the case for six years spent that in pre-trial, so it was complicated enough for that. Regarding Mr. Williams' experience with the criminal justice system, the third Gibson factor, Williams had never gone to trial on any of his previous offenses. He pleaded guilty in every case. And related to this factor, Williams consistently expressed to the trial court that he needed help with his case, which should have alerted the trial court that whatever perceived experience Mr. Williams had with the criminal justice system would not help him represent himself here. And I think this relates to the issue with Mr. Williams' distaste for the PD. A self-represented defendant with standby counsel has control over the decisions that are within the discretion of counsel. So the conflict Mr. Williams felt he had with the PD over the speedy trial issue would have been resolved. That's within the power of trial counsel. Had the court appointed trial counsel, again, it would have solved the fact that Mr. Williams was clearly overwhelmed with his representation, and he would have appeared at trial so that the defense table wouldn't have been completely empty. Are there any Illinois cases since Gibson where the court found that trial court abused its discretion in denying a request for standby counsel? Not that I found, Your Honor. But the fact remains that Gibson has set forth this test, which, you know, courts use now to determine whether or not there is an abuse of discretion. It is a fact-specific inquiry, and this undoubtedly is a unique case that has issues with the appointment of counsel and Mr. Williams' lack of counsel that sort of pervades the entire record. So if there is a case that's going to find the trial court abused its discretion, this is the one. I mean, Mr. Williams here clearly throughout the proceedings wanted the aid of counsel, and the trial court had the opportunity to provide him with that multiple times, one of which was this appointment of standby counsel. The trial court also had another opportunity to sort of correct its prior mistakes when Mr. Williams requested the reappointment of the PD. Just as there's a presumption against waiver of counsel, there's also a presumption for revocation of that waiver. It was clear from Mr. Williams' statements, again, he didn't want to act as his own attorney. It was unreasonable for the court to view Mr. Williams' request for the PD as a delay tactic. It should have been no surprise that Mr. Williams was again asking for counsel a week before in the day of trial, because Mr. Williams had requested the reappointment before he requested the reappointment of the PD. He had been asking for counsel since the day he waived it. His 2021 waiver was essentially conditional on his belief that he could be appointed other counsel. When the trial court denied his standby counsel motion, it said it was denying it at this time, again, indicating that Mr. Williams could get some type of counsel in the future. At the time the trial court denied Mr. Williams' request for reappointment, the court had witnessed Mr. Williams' conduct over the course of the proceedings and his own self-representation. The court had seen him focus his attention on irrelevant things not related to the case he was facing. They saw him refuse discovery, refuse to the state's motions, refuse to appear at hearings, disrupt the proceedings. The record here reveals that the trial court, whether out of frustration or something else, was determined to hold Mr. Williams to his waiver, essentially to make him lie in the bed that he had made for himself. But that's simply not how trial courts are meant to treat revocations because the presumption is in favor of revocation of a waiver of counsel. The interests of justice are not served by holding a defendant to the consequences of their waiver, especially in this case, where Mr. Williams' waiver didn't meet the constitutional standard in the first place. Mr. Williams' formal request for the PD could not be reasonably considered a delay tactic where he had constantly requested the aid of counsel previously. Finally, just regarding the in absentia admonishment, Heichold doesn't foreclose this issue for Mr. Williams. In Heichold, the finding of substantial defendant's right to confrontation was exercised through his attorney who appeared at trial and cross-examined the state's witnesses. The state made that argument on appeal and the court mentioned the fact that the defendant retained his confrontation rights through counsel more than once in its decision. Here, of course, that wasn't the case. Mr. Williams was pro se when he indicated he didn't want to attend his trial, so his decision not to attend trial obviously meant that there would be no one to cross-examine the state's witnesses at all. Because the trial court knew that fact when it admonished Mr. Williams prior to trial, it needed to tell him that he was waiving his right to confrontation altogether in order to substantially comply with Section 113-4. Again, including substantial compliance was met in Heichold on those facts. It was important that the defendant had retained his right to confrontation through his attorney. Here again, the trial court was aware that there would be no cross-examination but failed to tell if he absented himself from trial. What happened here wasn't contemplated in Heichold. This is a narrow place where the trial court needs to advise the defendant in essence that he's waiving his right to confrontation if he doesn't appear. Justice Breyer, you're on mute. You're on mute. I'm sorry. I was going to just remind you, counsel, you wanted to save a little time for rebuttal. Oh. I didn't want to give you time to do that. Thank you. Thank you. Counsel, Mr. Levitsky, we'll hear from you now, sir. Thank you. Again, Assistant State's Attorney Brian Levitsky for the people. May it please the court, counsel. Justice Reyes, you started by asking us what the judge should do in this case. And we're talking about an abusive discretion standard as it applies to all of the first three issues relating to the judge's decision about standby counsel and accepting the waiver and reappointment. And another judge in another case could do something different under the same standard. So the question before us is, did this judge in this case abuse his discretion in the decisions that he made? And the answer is no. Turning to the first issue, the court properly allowed defendant to waive counsel in 2021. Again, it's simple. The right the defendant had was to appointment of counsel, specifically the public defender. He absolutely knew that he had that right. It was explained to him twice in the 401A admonishments. He'd worked with the public defenders for over six years. He said during the second admonishments that he understood it. And it was absolutely voluntary. In fact, it was purposeful. He explained he didn't want to work with the public defenders. He said they were conflicted. He didn't trust anyone in the Cook County corrupt system. He wouldn't work with APD Malone because she wouldn't pursue his admittedly baseless speedy trial issue. I'm sorry to interrupt you, but the trial court have directed the public defender's office to assign a different assistant to the case? No, your honor. The access is the public defender's office generally that gets appointed. The specific public defenders who are assigned is up to the office of supervisors. And in this case, the judge said that he would allow the defendant to speak to the supervisors. I believe it was APD Harvey. I don't know personally if she's a supervisor, but she also spoke to the defendant in this case. And later on in the proceedings, the court's familiar with the record. There was some discussion about whether APD Malone was even still in the unit or whether she was in the building. But the rule is generally that your right is to appointment of the public defender. And it's up to the ad office to make the decision about who's actually going to someone confusing is because the defendant explicitly doesn't address the fact that his section 1133B motion was for alternative counsel. Defendant did have a right to make that request. It's simply the case that he didn't have a compelling reason for appointment of counsel other than the public defender. It doesn't mean that he didn't understand what his right was. He was just asking for something that he wasn't entitled to. And like in time, he refused to accept the judge's ruling on it. So should a trial court accept a defendant's waiver, even if there's a misunderstanding of the law or procedure? If the defendant indicates a misunderstanding of the procedure, I think it's, you know, the court should, of course, we would want the court to always make sure that the defendant fully understands what his rights are. And those are the rights that he received and said that he understood pursuant to the 401A admonishments. But defendant's request for alternative counsel just went beyond that. He understood his right specifically was to appointment of the public defender. That was the right that he knowingly and voluntarily waived. So the fact that he wanted something else, something to the side, something additional above and beyond what he was entitled to, doesn't show that he didn't understand what he was actually entitled to, which is just appointment of the public defender. Does that answer the question? Thank you. And the court also properly exercises discretion in refusing to reappoint the public defender and the hearing that was held for purposes of trial planning. Frankly, this wasn't a genuine request. It came in the middle of other obvious delay tactics. At this time, defendant was pursuing his interlocutory appeal to the Illinois Supreme Court for his motion to dismiss based on the meritless speedy trial claim. He objected to trial. He again raised his request for alternative counsel. Later on the day of court, he asked for another fitness examination after having previously said that he didn't want another examination. So this was another delay tactic, and it came after the court had warned him, both during the initial and the later time that he had waived, that the court could find that it was a delay tactic. When defendant asked for the reappointment prior to trial, the judge said he was trying to manipulate the system, again, based on everything that he was doing in addition to asking for counsel. Defendant specified this issue in his motion for a new trial. The judge revisited it, looked at the record, and explicitly said it was a delay tactic. There was no requirement for the judge to quantify what the delay would actually be. The question is just was it a logical conclusion. And based on the totality of the circumstances, the judge didn't abuse his discretion in finding that it was, especially where the judge noted that there was a mountain of discovery that had been generated, as well as substantive motions that APD Malone specifically had not been present at. I can't imagine any public defender who would say that they would answer ready in these circumstances a week before trial, let alone on the day of trial. So the judge certainly didn't abuse his discretion in denying the last-minute request for reappointment. I would also just note that the defendant cited the Pena case. One of the things that distinguishes that case from here is that the judge there didn't know that the defendant had funds to secure outside counsel in denying the request. It was simply a choice between the public defender or representing himself pro se, which was something that the court noted. So that case doesn't substantially help defendant. Also, defendant relies heavily on the presumption against waiver, but that's only when there's some ambiguity in the record. Defendant made it absolutely clear throughout the proceedings that he had absolutely no interest in working with the public defender. And if the court had made the decision to reappoint it at the last minute, frankly, given defendant's history of refusing to work with the public defender, his purposeful explanation of why he wouldn't work with them, there's simply no case that the trial would have proceeded in a timely fashion without further problems developing. Or that the issue on appeal would be that the court abuses discretion by foisting the public defender on him against his clear refusal to work with them. Well, given his reluctance to work with the public defenders and also as counsel has mentioned earlier, the seriousness of the charges, the complexity of the case, shouldn't a court have appointed a standby counsel? So there certainly were, to answer the question in this case, the court didn't abuse his discretion deciding no. Another judge could have decided yes. But one thing to back up a little bit is that the court said that and as we've just been talking about, defendant had no interest in working with the public defender. So if the public defender was appointed a standby counsel, there's simply no reason to think that that would have generated additional problems at trial and potentially additional issues on appeal. Again, this was frankly not a genuine request again. Defendant essentially wanted hybrid counsel. I apologize in the brief I said this was shadow counsel, but I meant to say hybrid counsel, which is not standby counsel. He never really offered a specific reason for counsel other than to do research. And what the judge did in exercising his discretion was to deny the formal request that was written in the motion, but said that it would reconsider appointment if defendant said that he needed help securing a subpoena. The only thing that he ever had sought like a subpoena was the records of the entire Harvey Police Department based on his phishing expedition, as the court called it, to find some corruption that would help him beat these charges. There wasn't anything that he ever indicated that he actually needed standby counsel to do. But as Justice Ray, as you noted, there hasn't been a case since Gibson that found there was an abuse of discretion for refusing to appoint standby counsel. In fact, in Gibson, one of the issues was the court didn't even know that it had discretion to do that. And it wouldn't be the case that the trial would have continued where defendant was at an empty table. Frankly, this defendant had no interest in going to trial at all. From the his objective was to dismiss the charges first by rushing the prosecution with a speedy trial claim, and then by throwing the APD under the bus by saying that she was conflicted and appealing it to the Supreme Court. He didn't want a trial where he was sitting there in that trial. He didn't want a trial at all. And that's why he remained in the holding cell, refused to participate, refused updates, refused to receive any indication of what the testimony was, didn't want to be part of the instructions conference, didn't want to be present for the jury verdict. He wanted nothing to do with these proceedings. If I may have one second. And that gets to the substantial compliance with the absentia admonishments. The record here shows that the judge had twice told him that the case could proceed in his absence. And that is the essence of the admonishments that defendant had a right to. So the high school decision does tell us that that is substantial compliance. And this isn't significantly different from what happened in that case. Remember that the absentia admonishments are designed to prevent bail jumping. This isn't a case where the defendant had no reason to know that there was a trial going on at all. He was in the holding cell again. He absolutely voluntarily absented himself from the proceedings and clearly had no interest in participating in trial at all. What's also a little bit unique about this case is that we did have the entire fitness jury trial. Defendant was present for that. He saw his attorneys, including APD Malone, conduct cross examination. So he certainly understood that that was something that would happen at a trial, even if he didn't receive the specific admonishment about it. And in their reply brief, the defendant says that his non-appearance at trial was driven by his inability to defend himself. Do you agree? I disagree, Your Honor. I think that we're, first, I think we're making inferences based on defendant's conduct and his words. My interpretation of the record, as I said, is that defendant's goal was to find some way to get the charges dismissed because he knew even before he was arrested that he was facing the possibility of life in sentence and that he had no defense to this absolutely horrific series of offenses that he had committed. And so what he tried to do was get the case dismissed based on the speedy trial violation, which, as we all know, was meritless. But he was fixated on it like in Kahn, and that's why he kept trying to ask for some alternative counsel who would raise the basis claim. The fact that he didn't understand that it was a bad argument, that it wouldn't go anywhere, like in Kahn, doesn't show that he didn't understand anything about what his right to counsel was or what would potentially happen to trial. He was simply fixated on a losing trial strategy. What if there had been a standby counsel appointed? What role would that standby counsel have had with the defendant's decision to leave the proceedings and have the trial pursued without him? What role would the standby counsel have had? So I think there is a few different options. Obviously, we have to speculate a little bit. Defendant suggests that one option is the standby counsel could have then been elevated to counsel, which would be another exercise of discretion. Had that happened, again, given that the court said that standby counsel would be a public defender and given defendant's refusal to have a public defender as his attorney and his clear indication that he wanted to remain in strategic control of the case, I think that would simply be another issue that defendant would have raised on appeal. But as to what standby counsel could have done absent that elevation, it's hard to say, because I think standby counsel would typically have to consult with the client to make any decisions or to offer any advice. So it's possible that standby counsel also would have been sitting at the table by himself or herself. I realize that's not a satisfactory answer, but it's... No, I realize that it called for some speculation, but I just don't know within the framework of what a standby counsel can and cannot do whether there was some clear answer. Right. What defendant specifically indicated he wanted counsel to do was to help him conduct legal research, things of that matter. But it wasn't ever really specified. My inference, again, is that he wanted standby counsel other than the public defender, a civil pro bono attorney who would help him with his interlocutory appeal to the Supreme Court. I have no faith that he had any interest in having counsel actually assist him with this trial. If there are no further questions, then for these reasons and those stated in the brief, the people would respectfully ask the court to affirm defendant's convictions. Thank you. Thank you much. Ms. Warda. Thank you. So I believe Justice Reyes asked if the court should accept a waiver if the defendant doesn't understand the procedure. And here, the answer is that the trial court did abuse its discretion in accepting the waiver where Mr. Williams clearly didn't understand what his rights were with regard to his entitlement to counsel. Williams's confusion about alternative counsel and standby counsel was really just a symptom or an example of the fact that he didn't truly desire to represent himself, which is the ultimate question. Regarding the court's abuse of discretion and not appointing standby counsel, the state places great weight on Mr. Williams's distaste for the PD. But again, that's not the ultimate consideration for whether or not the trial court should have allowed Mr. Williams to represent himself or to appoint standby counsel. The appointment of standby counsel can temper disruption to defendant causes. And had the court appointed standby counsel, Williams would have not been so overwhelmed and would have appeared at trial. I don't think a great inferential jump is needed to say that had Mr. Williams had some support in preparing his defense, he would have appeared, because he said previously in the proceedings that he couldn't handle what he was reading. He didn't understand what was going on. And then after that happened, he said, I'm not dealing with this anymore. I can't do it. Why don't you appoint me counsel? So, Ms. Warder, you would though, that he had six years of assistance prior to trial. Yes. And I think that that cuts in favor of appointing standby counsel, because Mr. Williams was willing to work with the public defender. In light of his distaste for the public defender's office, though, and the judge indicating that he would have to be the public defender, is it an unreasonable stretch to conclude that he would not have accepted as standby counsel a public defender? If we're going off what Mr. Williams' issue was with the public defender, that issue would have disappeared if the public defender had been appointed as standby counsel. Mr. Williams would have retained the control of his case that is typically within the discretion of counsel. Speedy trial rights. Standby counsel would have helped guide him through the procedure of making such a claim. And so, again, combining the fact that Mr. Williams did have the PD for six years, then asked for the PD's reappointment before trial, and immediately asked for the PD's appointment at sentencing, plus the fact that the only issue he had with the PD was this speedy trial conflict. Well, that issue caused him to have distrust of the public defender's office. So, it wasn't just that issue, if it disappeared, that the distrust would necessarily go away. Plus, he voiced distrust because both the state's attorney and the public defender were being paid by the same entity. So, it kind of went beyond the speedy trial issue. Sure. Arguably, another irrelevant reason to waive counsel or to not trust the PD's office. And, again, the PD isn't the PD because the ultimate question rests with the trial court. And there's good reason for that. The right to counsel is extremely important. The trial court has the authority to maintain the structure of the trial or how people behave in this court. And the point of the trial court having the ultimate decision is so what happened here doesn't happen. A defendant doesn't go back and forth. The trial court should have seen that Mr. Williams clearly did not want to represent himself because he said he didn't multiple times and realized that, oh, this waiver doesn't meet the constitutional standard. I shouldn't grant it. And then when Mr. Williams continuously asked for the aid of counsel and specifically asked for standby counsel, he should have appointed standby counsel because that would have guided Mr. Williams in operating through this procedure of a trial, which he had never faced before. And finally, it should have been no surprise to the trial court that once Mr. Williams was getting close to trial and he realized that I'm not going to get any other counsel, despite the fact that some of the trial court statements indicated he would. He said, fine, I'll take the PD specifically. I don't think that anything about that was a delay tactic. It was just a final plea for counsel, which he had been doing the entire proceedings. So unless your honors have other questions, Mr. Williams would just request that this court recognize the inherent injustice in a jury trial with an empty defense table where a defendant has continuously asked for the aid of counsel and grant Mr. Williams a new trial. Thank you. Justice Reyes, any questions? No, no more further questions. Okay, well, thank you. Thank you very much to both of you. We appreciate your argument this morning. We will take this matter under advisement and issue you a decision in a reasonable length of time. Thank you very much. Have a wonderful holiday, both of you. Yes, happy holidays. Thank you. Happy holidays. Thank you. Take care.